**UNITED STATES of America, Appellee,**

v.

**Joseph L. BELCULFINE, Defendant-Appellant.**

**No. 74–1110.**

United States Court of Appeals, First Circuit.

Argued Sept. 10, 1974.

Decided Dec. 6, 1974.

Robert Snider, Boston, Mass., for defendant-appellant.

Alan R. Hoffman, Asst. U. S. Atty., with whom James N. Gabriel, U. S. Atty., was on brief for appellee.

Before COFFIN, Chief Judge, MOORE* and McENTEE, Circuit Judges.

COFFIN, Chief Judge.

Appellant was convicted in the United States District Court for the District of Massachusetts of the possession and mailing of a pipe bomb. The bomb, contained in a package addressed to the Worcester Music Co., exploded in the South Boston Postal Annex. Investigation by postal authorities revealed that the explosion had been caused by a home-made bomb charged with black powder, and triggered by a device wired to attached batteries by means of soldered circuits. Officials of the Worcester Music Co. told postal inspectors that appellant had been employed by Worcester as a service manager; that he had knowledge of electrical circuitry and soldering; that appellant and another former employee of Worcester were the proprietors of Bell Music and Amusement Co., against which Worcester had obtained an $80,000 judgment for breach of a covenant not to compete; and that Bell Music would be apt to have a workshop equipped to do electrical soldering.

Subsequently, the postal inspectors received a report from the Postal Service Crime Laboratory that appellant's thumb print had been identified on the inner wrappings of the parcel which had contained the bomb. The postal inspectors secured from a magistrate a warrant to search the premises of Bell Music and Amusement Co. In the affidavit submitted in support of their application for the warrant, the inspectors recounted the above described results of their investigation and stated:

"12. On several occasions between July 26 and August 8, 1973, we went to the premises of Bell Music and Amusement Company, Inc., at 1 Pine-

* Of the Second Circuit, sitting by designation.

land Avenue, Shrewsbury, Massachusetts, looked through the glass window. [sic] The premises consisted of a front office with one desk and file cabinets. To the rear of this office through a door partially open, we observed a wooden bench and table."

The present appeal arises out of the refusal of the district court to suppress the fruits of the search of Bell Music, strands of wire similar to that used in the construction of the bomb. Appellant contends that the inspectors' representation that they had observed a wooden bench and table in the Bell Music establishment was false, that evidence presented at, the suppression hearing made it apparent that they could not have seen what they said they saw, and that they admitted as much in their testimony at the hearing.[1]

A little over a decade ago the Supreme Court noted that it had

". . . never passed directly on the extent to which a court may permit [examination of the validity of a search warrant] when the search warrant is valid on its face and when the allegations of the underlying affidavit establish 'probable cause'." Rugendorf v. United States, 376 U.S. 528, 531–532, 84 S.Ct. 825, 827–828, 11 L.Ed.2d 887 (1964).

This observation came amid a slow thaw in the rigidity of the rule which had long predominated among the circuit courts that judicial scrutiny of the propriety of the issuance of a warrant could not probe beneath the surface of the supporting affidavits.[2] In several circuits the process of reassessment has culminated in the adoption of general standards which permit examination of the accuracy of affidavits underlying a warrant in a variety of circumstances. In United States v. Carmichael, 489 F.2d 983 (7th Cir. 1973), the Seventh Circuit ruled that a defendant is

". . . entitled to a hearing which delves below the surface of a facially sufficient affidavit if he has made an initial showing of either of the following: (1) any misrepresentation by the governmnment agent of a material

---

1. The posture of the district court, relative to the issues raised by appellant, is as follows. The district judge referred the motion to suppress to the magistrate who wrote a memorandum recommending that the motion be denied. Although the magistrate permitted counsel for appellant to cross-examine the two postal inspectors about their observations of the Bell Music offices, he made no findings regarding the veracity of the statements made in the affidavit, indicating instead that he was constrained to look only within the "four corners of the affidavit".

The district judge heard brief argument from counsel for appellant, but, stating that he was concerned only "with what is in the affidavit", denied the motion to suppress without findings.

The government argues that appellant made no request for findings, that Fed.R. Crim.P. 41(e) does not require findings, and that absent such findings we must affirm the action of the district court if any reasonable view of the evidence supports it. *See* United States v. Horton, 488 F.2d 374 (5th Cir. 1973), cert. denied, 416 U.S. 993, 94 S.Ct. 2405, 40 L.Ed.2d 772 (1974). Here, although the government in its memorandum in opposition to the motion to suppress cited United States v. Carmichael, 489 F.2d 983 (7th Cir.

1973), a leading case permitting examination of the veracity of statements contained in a probable cause affidavit, neither the magistrate, nor the district court believed it permissible to delve beneath the surface of the affidavit. Since we hold that the district court must, in certain circumstances, delve beneath the surface of a facially sufficient affidavit, it would be improper for us to treat the case as though the district court had decided that no intentional misstatement had been made in the affidavit. Thus, this case is distinguishable from *Horton*, where the district court did not appear to have misconceived the controlling law.

2. *See, e. g.,* United States v. Gillette, 383 F.2d 843 (2d Cir. 1967); United States v. Dunnings, 425 F.2d 836 (2d Cir. 1969); King v. United States, 282 F.2d 398 (4th Cir. 1960); United States v. Upshaw, 448 F.2d 1218 (5th Cir. 1971); United States v. Pearce, 275 F.2d 318 (7th Cir. 1960); United States v. Roth, 391 F.2d 507 (7th Cir. 1967); United States v. Bridges, 419 F.2d 963, 966 n. 4 (8th Cir. 1969); Chin Kay v. United States, 311 F.2d 317, 323 (9th Cir. 1962) (dissenting opinion); United States v. Harwood, 470 F.2d 322 (10th Cir. 1972).

fact, or (2) an intentional misrepresentation by the government agent, whether or not material." 489 F.2d at 988.

Evidence should be suppressed, the court ruled, only if after the hearing the trial court finds the government agent to have been "recklessly or intentionally untruthful". *Ibid.* Upon such a finding, evidence resulting from a search pursuant to a warrant based on the untruthful affidavit must be suppressed, the court held, regardless of whether, absent the misrepresentative portions, the affidavit still establishes probable cause.[3]

The Fifth Circuit, in United States v. Thomas, 489 F.2d 664 (5th Cir. 1973), discussed the rule established by the Seventh Circuit in *Carmichael*, and adopted a rule which is similar, but marked by two important variations. Evidence should be suppressed, the court ruled, if the warrant was issued on the basis of an affidavit containing a misstatement that

". . . (1) was committed with an intent to deceive the magistrate, whether or not the error is material to the showing of probable cause; or (2) made non-intentionally, but the erroneous statement is material to the establishment of probable cause for the search." 489 F.2d at 669.

The Fifth Circuit's formulation of the rule, unlike the Seventh Circuit's would hold a warrant invalid if the underlying affidavit contained a negligent but unintentional misrepresentation that was material.[4] A second distinction between the rules set forth in the two decisions is that the Fifth Circuit explicitly requires that a non-material misrepresentation must have been made with an intent to deceive the magistrate if it is to vitiate the resulting warrant. The Seventh Circuit's rule seems to contemplate no determination of whether the affiant intended to deceive the magistrate.[5]

In essence the two rules reflect differing pragmatic judgments of what sort of misconduct—negligent or intentional, flagrant or trivial—can and ought to be deterred by the suppression of evidence at trial. At what point does the increase in deterrence effected by an expansion of the Fourth Amendment rights of defendants become so marginal that it does not warrant the hindrance to successful prosecution of the guilty which results?

"The rule is calculated to prevent, not to repair. Its purpose is clear—to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it." Elkins v. United States, 364 U.S. 206, 217, 80 S.Ct. 1437, 1444, 4 L.Ed.2d 1669 (1960).

We find perplexing the question of the prophylactic value of the exclusion of evidence secured with a warrant issued in

**3.** We accept the Seven Circuit's phrasing as the proper characterization of "material" in this context—information which is essential to a showing of probable cause—and so use the term throughout this opinion. We reject appellant's effort to have us accept a definition which would equate "material" to relevant to an element of probable cause. Kipperman, Inaccurate Search Warrant Affidavits As a Ground for Suppressing Evidence, 84 Harv.L.Rev. 825, 829 n. 35.

**4.** The position of the court on the question of the significance of material misstatements negligently made is rendered somewhat nebulous by a footnote several pages subsequent to the quoted passage which states that the court does not reach the question of what degrees of negligence will invalidate a warrant. 489 F.2d at 671 n. 5.

Both the *Thomas* and *Carmichael* courts discuss the arguments in Kipperman, Inaccu-

rate Search Warrant Affidavits As a Ground for Suppressing Evidence, 84 Harv.L.Rev. 825 (1971), which advocates the exclusion of evidence secured with a warrant which depends for probable cause on negligently misstated facts.

**5.** The importance of this distinction becomes apparent in the context of the *Thomas* opinion. The court found that the affidavit there challenged contained knowing misrepresentations indicating that the agent's sources had named a man called Finley in connection with criminal activities described in the affidavit. In fact the sources had named a man called "Tee" and the agent had concluded, on the basis of further investigation, that "Tee" was Finley. Closely analyzing the facts, the court held the resulting warrant valid since the agent's false statements were made in "good faith", 489 F.2d at 671–672, i. e., with no intent to deceive the magistrate.

reliance on negligent and material, but not intentional misstatements. At this stage of development of legal doctrine, we would hesitate to adopt a position for this circuit on a hypothetical basis. Suffice it to say that, as we view the record, the question is not before us, and we imply no views as to the answer.[6]

■ We find the misstatements at issue in the present appeal non-material. The testimony and photographic evidence adduced at the suppression hearing establish conclusively that the statement in the affidavit that "[t]o the rear of this office through a door partially open, we observed a wooden bench and table" was incorrect.[7] Excising that paragraph of the affidavit, however, we still find at least the minimal requirements for probable cause satisfied. The affidavit truthfully recounted the statements of the Worcester Music Company officials that they had won a substantial judgment against appellant and Bell Music, that appellant had electrical wiring skills, and that Bell Music would probably have a workshop facility. Combined with the information supplied by the Postal Service Crime Laboratory with respect to the manner of construction of the bomb and the identification of appellant's thumb print on the wrappings of the bomb, these facts viewed in a commonsense manner were sufficient to establish probable cause for a search of Bell Music. United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1964); Rosencranz v. United States, 356 F.2d 310 (1st Cir. 1966).

That we regard the misstatement in the affidavit as immaterial in the sense of not being a "but for essential" of probable cause, however, does not dispose of the case. The fact that the investigating agents had actually seen a workbench within the Bell Music premises may have carried great weight with the magistrate, for it both provided an independent fact supporting a finding of probable cause, and verified by observation the educated guess given by the Worcester Music officials, thus strengthening the credibility of all they said. It changed a marginally adequate affidavit into a solidly persuasive one. A knowing misstatement of so significant a fact would exhibit exactly that quality of unscrupled zeal which impelled the adoption of the exclusionary rule.

We are sensitive to the fact that allowances must be made for errors in judgment, observation, or memory on the part of fallible human beings endeavoring faithfully to carry out the duties of office, sometimes under conditions of great pressure. But we see no policy reason for overlooking intentional, relevant, and non-trivial misstatements in an affidavit which could subject any maker of such, be he an official or a private citizen, to a fine or imprisonment for perjury under 18 U.S.C. § 1621.[8] In-

---

6. *Compare* United States v. Gonzales, 488 F.2d 833 (2d Cir. 1973), and United States v. Marihart, 492 F.2d 897 (8th Cir. 1974).

7. Inspector O'Leary testified that his observation was through a closed drape. "It was a quick look, but I looked, and to the best of my knowledge, I saw what appeared to be a workbench or a table."

   Inspector Peterson testified that he had "a feeling" that his observation was through a glass door rather than a window, and that there may have been a shade on the door which may have been drawn. Photographs introduced into the record by appellant show that it was not physically possible for the inspectors to have seen the workshop in the Bell Music offices from either the door or the window.

8. 18 U.S.C. § 1621 reads in part:
   "Whoever, having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true, is guilty of perjury . . .."
   We note that the term "material" is here used in the broader sense of relevant or persuasive. *See* United States v. Wesson, 478 F.2d 1180 (7th Cir. 1973); United States v. Birrell, 470 F.2d 113, 115 n. 1 (2d Cir. 1972).

deed, policy suggests particular sensitivity to such misstatements in an affidavit for a search warrant which is necessarily granted ex parte, and in complete reliance upon the truthfulness of the statements in the affidavit. The major reliance for implementation of the Fourth Amendment is a warrant, a judgment of probable cause, i. e., a conclusion that there exist "reasonable grounds to believe—that criminally related objects are in the place which the warrant authorizes to be searched, at the time when the search is authorized to be conducted",[9] by "a neutral and detached magistrate . . . [not of an] officer engaged in the often competitive enterprise of ferreting out crime." Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948).

█ Were the judicial response to be merely the elimination of the false statements and the assessment of the affidavit's adequacy in the light of the remaining averments, enforcement officers would be placed in the untoward position of having everything to gain and nothing to lose in strengthening an otherwise marginal affidavit by letting their intense dedication to duty blur the distinction between fact and fantasy. We therefore see no supportable alternative to suppression of evidence obtained pursuant to a warrant based on an affidavit containing an intentional, relevant, and nontrivial misstatement. We see no basis for confining this sanction to false statements made with the specific intent to deceive the magistrate as opposed to false statements merely intended to "round out the picture". We see no danger of frequent frustration of warrant-based searches and seizures occasioned by challenges based on intentional misstatements. Such challenges, to be entertained, would have to be preceded by a showing of falsity of allegation—a showing presumably not easily to be made in most cases.

█ Since neither the magistrate, nor the district judge dealt with the question whether the postal inspectors knowingly misrepresented the facts, we must remand this case for a hearing on that issue. The hearing should be conducted by the district judge and, if he determines that the misstatements in the affidavit were knowingly made, the evidence discovered in the search of Bell Music and Amusement Company must be suppressed and a new trial granted to appellant. In the future when a defendant makes a preliminary showing of knowing misstatements in an affidavit underlying a warrant, a hearing should be conducted by a judge to determine whether the evidence obtained pursuant to the warrant should be suppressed.

In Wingo v. Wedding, 418 U.S. 461, 94 S.Ct. 2842, 41 L.Ed.2d 879 (June 26, 1974), the Supreme Court held that the Federal Magistrates Act, 28 U.S.C. §§ 631–639, did not affect the longstanding requirement that evidentiary hearings in habeas corpus cases be conducted by a judge. The Court found "nothing in the text or legislative history of the Magistrates Act" to suggest that Congress intended to change the requirement.

> "Rather, both text and legislative history plainly reveal a congressional determination to retain the requirement. For, although the Act gives district judges broad authority to assign a wide range of duties to Magistrates, Congress carefully circumscribed the permissible scope of assignment to only 'such additional duties as are *not inconsistent with the Constitution and laws of the United States.*' 28 U.S.C. § 636(b) (emphasis added)." 94 S.Ct. at 2848.

In Campbell v. United States District Court, 501 F.2d 196 (9th Cir. Aug. 15, 1974), the Ninth Circuit faced the question whether the Magistrates Act permitted reference of a motion to suppress

---

**9.** Amsterdam, Perspectives on the Fourth Amendment (The Oliver Wendell Holmes Lec-  tures), 58 Minn.L.Rev. 349, 358 (1974) [footnotes omitted].

to a magistrate for findings and recommendations. Paralleling the Supreme Court's analytical approach in *Wingo* the circuit court sought to determine whether before the passage of the Magistrates Act the laws or Constitution required that a motion to suppress be heard, in the first instance, by a judge. The court found that unlike habeas corpus proceedings motions to suppress were subject to no preexisting requirement that they be heard initially by a judge. *See also* Weber v. Secretary of Health, Education, and Welfare, 503 F.2d 1049 (9th Cir. Sept. 13, 1974). That it is permissible to refer a motion to suppress to a magistrate does not imply, the court added, that the district judge is relieved of the responsibility of finally deciding the issues raised at the hearing. Scrupulous care must be taken, the court stated, that the final adjudication is made by the district court, without special deference to the findings of the magistrate.[10]

The rule we establish here is not addressed to the general question whether motions to suppress may be referred for preliminary action to a magistrate. We limit ourselves to one specific situation, where the veracity of an affidavit underlying a warrant is challenged. In such circumstances the credibility of witnesses is so likely to be determinative, and the evidence so delicately balanced that we see little probability that judicial time would be saved by preliminary reference to a magistrate. Furthermore, in this circuit we have relatively few full time magistrates; these deal with a limited number of federal agents. We see risks to both the defendant and the government in requiring the same magistrate who believed the challenged statements of government agents or who has believed them in the past, to hold a hearing to determine if the agents perjured themselves in obtaining a warrant. *Cf.* Halliday v. United States, 380 F.2d 270 (1st Cir. 1967).

Judgment vacated; remanded to the district court for further proceedings consistent with this opinion.

---

**10.** To preserve this allocation of authority the court established the following rules:

"If neither party contests the magistrate's proposed findings of fact, the court may assume their correctness and decide the motion on the applicable law.

"The district court, on application, shall listen to the tape recording of the evidence and proceedings before the magistrate and consider the magistrate's proposed findings of fact and conclusions of law. The court shall make a *de novo* determination of the facts and the legal conclusions to be drawn therefrom.

"The court may call for and receive additional evidence. If it finds there is a problem as to the credibility of a witness or witnesses or for other good reasons, it may, in the exercise of its discretion, call and hear the testimony of a witness or witnesses in an adversary proceeding. It is not required to hear any witness and not required to hold a *de novo* hearing of the case.

"Finally, the court may accept, reject or modify the proposed findings or may enter new findings. It shall make the final determination of the facts and the final adjudication of the motion to suppress." [Footnote omitted.] 501 F.2d at 206–207.