**UNITED STATES of America**
v.
**Joseph L. BELCULFINE.**
Crim. No. 73-202-C.

United States District Court,
D. Massachusetts.
June 16, 1975.

---

James N. Gabriel, U. S. Atty., Alan R. Hoffman, Asst. U. S. Atty., for plaintiff.

Robert Snider, Boston, Mass., for defendant.

## MEMORANDUM

CAFFREY, Chief Judge.

Defendant was convicted, after a jury trial, of the crime of possession and mailing of a pipe bomb. The bomb, which was lodged in a package placed in the United States mail bearing a label showing the Worcester Music Company, Worcester, Mass., as the addressee, exploded at the South Boston Postal Annex, causing injury to several postal employees at the Annex.

After the imposition of a prison sentence, defendant took an appeal to the United States Court of Appeals, which filed an opinion on December 6, 1974, remanding the matter to this court for a hearing by the district judge rather than by a magistrate. United States v. Belculfine, 508 F.2d 58 (1 Cir. 1974). In its opinion the Court of Appeals, at 63, described the scope of the remand as follows:

> "Since neither the magistrate, nor the district judge dealt with the question whether the postal inspectors knowingly misrepresented the facts, we must remand this case for a hearing on that issue. The hearing should be conducted by the district judge and, if he determines that the misstatements in the affidavit were knowingly made, the evidence discovered in the search of Bell Music and Amusement Company must be suppressed and a new trial granted to appellant."

This court went to Worcester on February 18, 1975, accompanied by counsel, defendant and a court reporter, and took a view of the premises formerly occupied by Bell Music Company which were the subject matter of the affidavit in question. The premises consist of four rooms: a front room partitioned to create a small reception area and, to its right, a small office, with a doorway in which no door was ever hung between the two; a middle room called the display room; and a rear room called the repair room which contained a heavy

8

wooden bench. A door whose area is about two-thirds glass opens from outside the building into the small reception room and a large picture window makes the outside wall of the office; at the time of the view the same shade was on the window portion of the outside door and the same drapes were on the picture window as were present at the time of the observations referred to in the affidavit. This court examined the interior of the premises and observed closely what could be seen both through the window in the door and through the picture window to the right of the door. The court then received sworn testimony on the matter on February 18 and 19, 1975, subsequent to which counsel filed requests for findings and rulings and memoranda of law.

It should be noted initially that, as the Court of Appeals pointed out in fn. 1 to its opinion, 508 F.2d 58, at 60:

" . . . (the magistrate) made no findings regarding the veracity of the statements made in the affidavit. . . . The district judge . . . denied the motion to suppress without findings."

Thus, the case went to the Court of Appeals with no finding of fact, by either the magistrate who heard the motion to suppress or the district judge who tried the case, as to the truth of the statements made by the postal inspectors in the affidavit filed in support of the application for a search warrant.

Despite the unusual state of this particular record, the Court of Appeals observed at a later stage of its opinion, 508 F.2d 58, at 62:

"The testimony and photographic evidence adduced at the suppression hearing establish conclusively that the statement in the affidavit that '[t]o the rear of this office through a door partially open, we observed a wooden bench and table' was incorrect."

This observation by the Court of Appeals is the first time that any finding as to

the truth or falsity of the statements of fact in the affidavit has been made by any level of the United States Court. This court, which held the hearing on remand and had the benefit of taking a view of the premises and observing the demeanor of the postal inspectors and of the defendant and other witnesses who testified about the subject matter of the remand, finds, on the contrary, that persons standing outside the premises looking through either the door or the window could see objects positioned in the middle or display room. This court finds that machines, a bridge table, and other objects were in the display room at the time of the observations in question and that machines were in fact repaired in the display room. The court also finds that the shade on the glass door was kept approximately one-quarter drawn and the drapes were at times closed and at times parted. The court further finds that although the pull on the traverse rod was inoperable, the drapes could be parted manually, and that when Inspector O'Leary made his observations the drapes were parted and it was possible to see objects in the display room. This court finds that a person standing on the outside looking through the glass door or through the picture window could not see the heavy work bench located in the rear room called the repair room. Lastly, this court finds that the postal inspectors were not talking about the work bench in the repair room when they testified at the magistrate's hearing but, in fact, were talking about objects in the middle room which to them looked like a wooden bench and table.

In the event that this court is bound by the statement in the opinion of the Court of Appeals that the representations made in the affidavit were not truthful, and is not free to make its own findings of fact on the evidence now before it, I further find that any misrepresentation on the part of either of the postal inspectors was unintentional. During the course of the view, this court observed a standard size card table with

folding legs in the middle room and was told by the defendant at the hearing that this card table normally was present in that room. This court also received evidence, including testimony by the defendant, that juke boxes and other coin-operated devices frequently were repaired in the middle room, and it should be noted that even in the photographs which appear on pp. 81 and 82 of the Record Appendix there are machines visible in the middle room.

On the basis of the information adduced at the hearing and the information gained at the view, during which the court minutely examined both the inside and the outside of the premises, and having in mind the demeanor and testimony of Inspector O'Leary and Inspector Peterson, I find that persons looking through either the door or the picture window of the Bell Music and Amusement Company could see into the middle room and could see objects contained therein. In fact, this court was able to observe a chair against the rear wall of that room even with the lights in the room turned off.

Accordingly, I find that Inspectors O'Leary and Peterson, if they did in fact communicate inaccurate information to the magistrate, did not do so intentionally, wilfully or knowingly and that they, in fact, described in the affidavit filed in support of the application for a search warrant what they sincerely and honestly believed they saw.

Consequently, the evidence obtained in the search of the Bell Music and Amusement Company premises need not be suppressed nor need a new trial be granted to appellant.

In the light of this ruling, the bail on which the defendant is presently enlarged is cancelled as of 10:00 a. m., Monday, June 23, 1975, at which time defendant is ordered to surrender himself at the office of the United States Marshal in Boston to serve the remainder of his sentence.