Commonwealth *vs.* Bruce J. Reynolds.

Bristol. October 4, 1977. — December 30, 1977.

Present: Hennessey, C.J., Quirico, Kaplan, Liacos, & Abrams, JJ.

*Search and Seizure. Probable Cause. Constitutional Law,* Search and seizure, Probable cause. *Practice, Criminal,* Suppression of evidence.

Review of decisions pertaining to the validity of a search warrant based upon an affidavit containing misstatements. [143-147]

Where a stipulation established that an affidavit in support of a search warrant contained material misstatements but failed to show whether the misstatements were intentional or the result of mere inadvertence without negligence, this court remanded the case to the trial judge for the taking of proof. [149-151]

Indictments found and returned in the Superior Court on November 7, 1973.

A motion to suppress evidence was heard by *Taveira, J.,* and a question of law was reported by him to the Appeals Court. The Supreme Judicial Court, on its own initiative, ordered direct review.

*Edward A. Roster* for the defendant.

*Lance J. Garth,* Assistant District Attorney, for the Commonwealth.

Kaplan, J. The defendant Reynolds, indicted for receiving stolen goods and other offenses, moved in the Superior

Court before trial to suppress evidence (the alleged stolen property) seized by the Commonwealth pursuant to a search warrant which had been issued by a District Court clerk on the affidavit of a police officer. Facts bearing on the motion to suppress were stipulated between the Commonwealth and the defendant. After consideration, a judge of the Superior Court denied the motion and, acting under G. L. c. 278, § 30A, reported the following question to the Appeals Court (whence we took it for direct review): "Should a motion to suppress evidence be allowed when such evidence was obtained upon an affidavit containing misstatements?" We shall first discuss the question more or less in the abstract, and then address ourselves to the particular case.

1. After the Supreme Court of the United States had held in *Weeks* and *Mapp*[1] that evidence obtained in violation of the Fourth Amendment was subject to exclusion at trial, and after *Spinelli, Aguilar,* and *Brinegar*[2] had described the requirements for a finding of "probable cause" under the amendment, it might have been foretold that courts would begin to question a certain rule restricting attacks on the validity of search warrants. By that rule the allegations of an affidavit supporting a warrant and purporting to show probable cause could be tested judicially only for their surface sufficiency; in no event could the allegations be pierced and their truth inquired into. See Annot., 5 A.L.R.2d 394 (1949). The Supreme Court intimated in *Rugendorf* v. *United States*, 376 U.S. 528, 532 (1964), that there was a doubt whether the rule could survive, but the Court has not answered the question.[3]

---

[1] *Weeks* v. *United States*, 232 U.S. 383 (1914) (fruits of illegal searches and seizures may not be used in Federal prosecutions). *Mapp* v. *Ohio*, 367 U.S. 643 (1961) (*Weeks* exclusionary rule held binding on States).

[2] *Spinelli* v. *United States*, 393 U.S. 410 (1969). *Aguilar* v. *Texas*, 378 U.S. 108 (1964). *Brinegar* v. *United States*, 338 U.S. 160 (1949).

[3] The Court may face the question in reviewing *Franks* v. *State*, 373 A.2d 578 (Del.), cert. granted, 434 U.S. 889 (1977).

In defense of the rule, it may be pointed out that the evidence sought to be suppressed will be in every case material to proof of guilt, otherwise the defendant would not be at pains to try to put it beyond consideration of the triers. An affiant, usually a police officer, will have submitted particulars on oath purporting to establish probable cause. A disinterested magistrate must have examined the allegations and found them sufficient on their face and at least not transparently false. Judicial review of the facts in suppression hearings might thus be thought an unessential if not a perverse procedure for which a price in time and effort has to be paid. See *State* v. *Petillo*, 61 N.J. 165 (1972), cert. denied, 410 U.S. 945 (1973), habeas corpus granted sub nom. *United States ex rel. Petillo* v. *New Jersey*, 400 F. Supp. 1152 (D.N.J. 1975), vacated per curiam, 541 F.2d 275 (3d Cir.), habeas corpus granted on remand, 418 F. Supp. 686 (D.N.J. 1976). On the other hand, the amount of critical attention a magistrate typically can give to an application, especially in making any inquiry as to truth, is very limited, and these applications in all events are proceeded with ex parte. See Model Code of Pre-Arraignment Procedure § SS 290.3, Commentary at 570 (1975). (In the Commonwealth the magistrate may be a clerk or subclerk without legal training. See G. L. c. 276, § 1; c. 218, § 33.) To confine judicial review to a mere demurrer-like examination of the papers is to depend on the police without a significant outside check. It would appear incongruous to allow circumvention of probable cause requirements by insulating the statements of the police from substantially all effective scrutiny as to their truth. Nor does it appear that reliance can safely be put on any sanction available against the police themselves. See *Mapp*, 367 U.S. at 652-653; *People* v. *Cahan*, 44 Cal. 2d 434, 445-447 (1955) (Traynor, J.). Lawless or mindless police action under warrants improperly obtained may impinge on the privacy of the innocent as well as the guilty.

It has been held in the Federal circuits generally,[4] and in some State courts[5] (with others opposed[6]), that the truth of affidavits is not altogether beyond inquiry at suppression hearings, that there are situations in which findings of falsity should result in invalidation of the corresponding warrants and exclusion of the evidence obtained. Differences arise, however, as to the nature of these situations, which is another way of saying that there remains the question how far the postulated purposes of an exclusionary rule — deterrence of official misconduct, protection of the integrity of the legal process — are to be pursued despite the price paid for the exercise. See *United States* v. *Halsey*, 257 F. Supp. 1002 (S.D.N.Y. 1966). On the side of procedure on an application to suppress, it would be agreed that a means should be found, if possible, to screen out promptly attacks without merit including those made merely as an irregular

---

[4] See *United States* v. *Collins*, 549 F.2d 557 (8th Cir.), cert. denied, 431 U.S. 940 (1977); *United States* v. *Esparza*, 546 F.2d 841 (9th Cir. 1976); *United States* v. *Lee*, 540 F.2d 1205 (4th Cir.), cert. denied, 429 U.S. 894 (1976); *United States* v. *Vento*, 533 F.2d 838, 858 (3d Cir. 1976); *United States* v. *Luna*, 525 F.2d 4 (6th Cir. 1975), cert. denied, 424 U.S. 965 (1976); *United States* v. *Belculfine*, 508 F.2d 58 (1st Cir. 1974), on remand, 395 F. Supp. 7, aff'd, 527 F.2d 941 (1st Cir. 1975); *United States* v. *Thomas*, 489 F.2d 664 (5th Cir. 1973), cert. denied, 423 U.S. 844 (1975); *United States* v. *Gonzalez*, 488 F.2d 833, 838 (2d Cir. 1973). Contra, *Kenney* v. *United States*, 157 F.2d 442 (D.C. Cir. 1946); but cf. *United States* v. *James*, 494 F.2d 1007, 1016 (D.C. Cir. 1974).

[5] *State* v. *Davenport*, 510 P.2d 78, 82 (Alas. 1973). *Theodor* v. *Superior Court*, 8 Cal. 3d 77 (1972). *State* v. *Boyd*, 224 N.W.2d 609 (Iowa 1974). *State* v. *Melson*, 284 So. 2d 873 (La. 1973). *State* v. *Luciow*, 308 Minn. 6 (1976). *State* v. *Nanoff*, 160 Mont. 344 (1972). *State* v. *Spero*, 117 N.H. 199 (1977). *People* v. *Alfinito*, 16 N.Y.2d 181 (1965). *McCaskey* v. *State*, 534 P.2d 1309 (Okla. Crim. 1975). *State* v. *Wright*, 266 Or. 163 (1973). *Commonwealth* v. *D'Angelo*, 437 Pa. 331 (1970). *State* v. *Goodlow*, 11 Wash. App. 533 (1974).

[6] See *State* v. *Sabari*, 109 Ariz. 553 (1973); *Liberto & Mothershed* v. *State*, 248 Ark. 350, 356 (1970); *Franks* v. *State*, 373 A.2d 578 (Del.), cert. granted, 434 U.S. 889 (1977); *State* v. *Lamb*, 209 Kan. 453 (1972); *Mattingly* v. *Commonwealth*, 310 Ky. 561 (1949); *State* v. *Petillo*, 61 N.J. 165, cert. denied, 410 U.S. 945 (1972); *Owens* v. *State*, 217 Tenn. 544 (1965).

means of securing marginal "discovery" of the prosecution's case or the identity of an informant.

-- Falsity in the affidavit can come about through intention, recklessness, negligence, or innocent mistake; the false information may be indispensable to a showing of probable cause or fall short of that. The case for suppression is felt to be strongest where material false information was intentionally introduced into the affidavit by an official acting as affiant.[7] There is diminished perceived ground for suppression as the factors of the blameworthiness of the official and the importance of the information shade off; but reasoned authority exists for suppression in some situations of intentional nonmaterial, and negligent material, misstatements.[8]

---

[7] A variety of wordings have been used to describe the extreme category of affiant insincerity. See *United States* v. *Belculfine*, 508 F.2d 58, 63 (1st Cir. 1974) ("intentional, relevant, and nontrivial" misstatement); *United States* v. *Dunnings*, 425 F.2d 836, 840 (2d Cir. 1969) (Friendly, J.), cert. denied, 397 U.S. 1002 (1970) (when judicial officer is "put upon by the police"); *United States ex rel. Petillo* v. *New Jersey*, 400 F. Supp. 1152 (D.N.J. 1975) (material inaccuracy knowingly introduced); *People* v. *Alfinito*, 16 N.Y.2d 181, 185 (1965) ("perjurious" statements); *Commonwealth* v. *D'Angelo*, 437 Pa. 331 (1970) (knowing and material misrepresentations); Kipperman, Inaccurate Search Warrant Affidavits as a Ground for Suppressing Evidence, 84 Harv. L. Rev. 825 (1971) (intentional inaccuracy); Model Code of Pre-Arraignment Procedure § SS 290.3 (1975) (material statements not in good faith).

[8] Many courts have gone to the point of applying an exclusionary rule to cases of reckless material misstatements, with recklessness defined at times as a lack of reasonable grounds for believing the averments to be true. See *United States* v. *Lee, supra*; *United States* v. *Luna, supra*; *United States* v. *Marihart*, 492 F.2d 897 (8th Cir.), cert. denied, 419 U.S. 827 (1974); *State* v. *Spero*, 117 N.H. 199 (1977). Some have gone further, arguing that warrants based on negligent material falsehoods should fail, see *Theodor* v. *Superior Court*, 8 Cal. 3d 77 (1972); Kipperman, *supra*, note 7, and a few courts appear ready to excise inaccuracies whatever their cause, and consider the sufficiency of the remainder, see *United States* v. *Thomas, supra*; *United States* v. *Harwood*, 470 F.2d 322, 325 (10th Cir. 1972); *State* v. *Davenport*, 510 P.2d 78, 82 (Alas. 1973). See also Comment, The Outwardly Sufficient Search Warrant Affidavit: What If It's False? 19 U.C.L.A.L. Rev. 96 (1971).

That suppression might follow from negligent as well as intentional misrepresentation has been supported on the ground of deterrence, and also on a simple analogy to the law of warrantless search. When war-

Such remarks on the subject as this court has made in previous opinions intimate agreement with the proposition mentioned above as least disputable (and perhaps lend support for a somewhat broader proposition). Thus we have twice been willing to assume arguendo that "a deliberate misrepresentation in an affidavit will render a search warrant invalid." *Commonwealth* v. *Murray,* 359 Mass. 541, 548 (1971). *Commonwealth* v. *Perez,* 357 Mass. 290, 301-302 (1970). See also *Commonwealth* v. *Gallinaro,* 360 Mass. 868 (1971). We have also said the contrary of " 'inaccuracies not going to the integrity of the affidavit.'" *Commonwealth* v. *Rugaber,* 369 Mass. 765, 768 (1976). *Commonwealth* v. *Murray, supra.* See also *Commonwealth* v. *Piso,* 5 Mass. App. Ct. 537, 543 (1977); *Commonwealth* v. *Sheppard,* 5 Mass. App. Ct. 765 (1977); *Commonwealth* v. *Kinnitt,* 2 Mass. App. Ct. 810 (1974); *United States* v. *Edwards,* No. CR-76-314-T (D. Mass. Dec. 5, 1977). Cf. *Commonwealth* v. *White, ante,* 132 (1977); *Commonwealth* v. *Haas,* 373 Mass. 545 (1977).

2. We turn to the details of the present case as they emerge from the report. Presented to the clerk of the First District Court of Bristol on August 22, 1973, was an affidavit dated the same day of Raymond C. McKearney, a Rehoboth police officer. He swore that on the previous day he had been informed by a detective of the Pawtucket, Rhode Island, police department that he, the detective, had received information from a "reliable informant" that two truckloads of assorted lumber, stolen from the Arland Lumber Company in Pawtucket, were in the possession of Bruce J. Reynolds of Rehoboth. McKearney swore, further, that Norman Bisson, general manager of the company, had

rantless searches are judicially reviewed by reference to a standard which echoes the constitutional language of reasonableness ("The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures"), it may be contended that a like standard should apply in judicial scrutiny of the statements offered to procure the issuance of a warrant. See *Theodor* v. *Superior Court, supra* at 98-100.

viewed this lumber, all pre-cut, from Rocky Hill Road, Rehoboth. "The lumber is to the rear of Bruce Reynolds home [82 Rocky Hill Road], and Mr. Bisson identified the covering on the lumber and also some of the lumber as that which was stolen from Arland Lumber Co. on August 20, 1973." On the basis of these averments, the clerk issued a search warrant on August 22. (It is unnecessary to state the exact terms of the warrant or of the return.)

According to the stipulation of the parties addressed to the truth of the averments of the affidavit, Bisson and McKearney were passengers in a car that was driven past the Reynolds house several times on August 21. Bisson did not observe any pre-cut lumber or any special factory covering on the lumber, and had not told the police that he had. He was able to observe a pile of black sheeting material on the Reynolds property and identified that as part of the material stolen from his company. After the drive past the Reynolds house, McKearney conferred with the chief of police of Rehoboth who "advised Officer McKearney as to the wording of the affidavit" that was presented as the basis for the issuance of the warrant.

We observe, first, that no support can be derived for a finding of probable cause from the allegations of the affidavit regarding information received from the Pawtucket detective. The detective's statement to McKearney stands on the unnamed informant's communication to the detective, but nothing is offered to substantiate the conclusion that the informant was "reliable." See *Commonwealth* v. *Stevens*, 362 Mass. 24, 27 (1972); *Commonwealth* v. *Monosson*, 351 Mass. 327, 329 (1966); *Spinelli* v. *United States*, 393 U.S. 410 (1969); *Aguilar* v. *Texas*, 378 U.S. 108 (1964). Second, all the other significant statements in the affidavit are shown by the stipulation to have been false.

There is one statement in the stipulation that has no counterpart in the affidavit, namely, that Bisson identified some black sheeting material as stolen. This statement cannot support the warrant because, being absent from the affidavit, it was not before the clerk who issued the warrant.

See *Commonwealth* v. *Causey*, 356 Mass. 125, 128 (1969); *Commonwealth* v. *Brown*, 354 Mass. 337, 345 (1968); *Aguilar* v. *Texas*, 378 U.S. 108, 109 n.1 (1964). Further, it appears from a hearing which preceded the submission of the stipulation that "[a]ccording to Mr. Bisson, this sheeting is of common manufacture and sold by many lumber companies."[9]

3. The stipulation, representing, as we may suppose, the lowest common denominator of anticipated testimony, is not full enough to base a judgment whether the behavior of the police was blameworthy or otherwise. Characterization of their conduct on the basis of the stipulation was not attempted by the judge, nor will it be by us here. But such an appraisal is important to decision, as point 1 shows. Therefore the matter will be remanded to the Superior Court for the taking of proof to permit the judge to reach a conclusion based on appropriately detailed findings. We can say now that if the judge should conclude on a preponderance of the evidence that the misstatements in the affidavit were intentional (they were certainly material), he should suppress the evidence obtained under the warrant. If he concludes that there was mere inadvertence without negligence, he should refuse to suppress. If his conclusion lies between these polar categories, he may return the matter directly to this court. In this troublesome area much may turn on detail, and we would be loath to formulate our views except with the benefit of a concrete, complete record on which a trial judge has had a chance to reflect.[10]

---

[9] As indicated in the text below, the case as it now stands does not admit of a characterization of the conduct of the Commonwealth through the police. In the absence of a complete record, it is not possible to evaluate the strength of any intimation that when it appeared that Bisson's identification of the black sheeting would be of dubious probative value, no mention of this was made in the affidavit, and reference to pre-cut lumber and special covering was then inserted.

[10] Similar reluctance to make a pronouncement in this field beyond the necessities of the particular case appears in *United States* v. *Belculfine*, 508 F.2d 58 (1st Cir. 1974), and *Commonwealth* v. *D'Angelo*, 437 Pa. 331 (1970).

We think the burden of persuasion should be on the defendant to justify suppression based on misstatements in an affidavit underlying a warrant. See *People* v. *Alfinito,* 16 N.Y.2d 181, 186 (1965); Model Code of Pre-Arraignment Procedure § SS 290.3(1)(b) (1975). Cf. *Commonwealth* v. *Botelho,* 369 Mass. 860, 867 (1976); *Commonwealth* v. *Antobenedetto,* 366 Mass. 51, 61 (1974) (Tauro, C.J., dissenting in part), and cases cited. Judges should keep in mind our policy of encouraging the use of warrants and shunning hypertechnical reading of warrants and supporting affidavits — a casuistical approach should likewise be avoided in interpreting the facts behind the affidavits. See *Commonwealth* v. *Smith,* 370 Mass. 335, 343 (1976); *Commonwealth* v. *Corradino,* 368 Mass. 411, 416 (1975).

With respect to procedure, the present status of the case is such that we do not face here the problem how to screen out plainly unmeritorious applications. We are prepared to say, however, that we join in the general view that the defendant usually should be obliged to make a preliminary showing, which ordinarily will be in affidavit form, that he has a case worthy of full hearing; otherwise hearing should be denied.[11] (It can be anticipated that there may be special difficulties, which will need to be worked out case by case, where a challenge is sought to be put to an affidavit in which the affiant has relied on information supplied by an unnamed informant.[12])

It has not escaped our attention that the exclusionary doctrine of *Weeks* and *Mapp* has been subjected to strong

---

[11] *United States* v. *Harris,* 501 F.2d 1 (9th Cir. 1974). *United States* v. *Carmichael,* 489 F.2d 983 (7th Cir. 1973). *United States* v. *Dunnings,* 425 F.2d 836 (2d Cir. 1969) (Friendly, J.), cert. denied, 397 U.S. 1002 (1970). *Theodor* v. *Superior Court,* 8 Cal. 3d at 103. Model Code of Pre-Arraignment Procedure § SS 290.3 (1975).

[12] See *McCray* v. *Illinois,* 386 U.S. 300 (1967); *Theodor* v. *Superior Court, supra* at 104-105; Grano, A Dilemma for Defense Counsel: Spinelli-Harris Search Warrants and the Possibility of Police Perjury, 1971 U. Ill. L.F. 405, 427-449; Comment, The Outwardly Sufficient Search Warrant Affidavit: What If It's False?, 19 U.C.L.A.L. Rev. 96, 123-134 (1971).

attack[13] (and been strongly defended[14]) and that it has been somewhat narrowed or weakened by recent opinions of the Supreme Court. *Stone* v. *Powell*, 428 U.S. 465, 482-489 (1976). *United States* v. *Peltier*, 422 U.S. 531 (1975). *Michigan* v. *Tucker*, 417 U.S. 433 (1974). We feel entitled to assume unless otherwise instructed by that Court that an exclusionary rule of some dimension is in force in this field under the Fourth Amendment. We have no occasion to discuss interpretations we may put on our own analogous constitutional provision, or rules we could subscribe to without constitutional compulsion.[15]

The case is remanded to the Superior Court for proceedings consistent with this opinion.

*So ordered.*

---

[13] *Bivens* v. *Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 420-423 (1971) (Burger, C.J., dissenting). Kaplan, The Limits of the Exclusionary Rule, 26 Stan. L. Rev. 1027 (1974).

[14] See *United States* v. *Peltier*, 422 U.S. 531, 551-562 (1975) (Brennan, J., dissenting). Amsterdam, Perspectives on the Fourth Amendment, 58 Minn. L. Rev. 349 (1974).

[15] See *Selectmen of Framingham* v. *Municipal Court of the City of Boston*, 373 Mass. 783 (1977), discussing *United States* v. *Janis*, 428 U.S. 433 (1976).