COMMONWEALTH *vs.* GEORGE DOUGLAS WILLIAMS.

Suffolk.   January 16, 1979. — August 22, 1979.

Present: HALE, C.J., GOODMAN, & DREBEN, JJ.

*Search and Seizure. Practice, Criminal*, Warrant, Disqualification of judge, Argument by prosecutor, Mistrial. *Eavesdropping. Pleading, Criminal*, Bill of particulars. *Judge. Evidence*, Redirect examination, Telephone conversation. *Identification*.

An affidavit in support of an application for a wiretap authorization was sufficient to establish probable cause for the authorization as required by G. L. c. 272, § 99. [285-287]

Any error in a judge's denial of a defendant's motion for particulars, which was denied without prejudice and without exception by the defendant, was harmless beyond a reasonable doubt where the defendant had access to information of police investigations set out in an affidavit for a wiretap warrant and to tapes of conversations on which the Commonwealth based its case. [287-288]

A judge who had authorized a wiretap of a defendant's telephone and a renewal of the wiretap warrant was not required to recuse himself from presiding at the defendant's jury trial. [288-289]

Where defense counsel at a criminal trial elicited testimony from an agent of the Drug Enforcement Administration that an informant had requested and received payments and thereupon sought to show that the informant had been paid to introduce drug sellers to the agent, the judge did not abuse his discretion in permitting the Commonwealth to elicit on redirect examination that the informant had received the money for the purpose of relocating in another city because of threats made on his life. [290]

At a criminal trial, the judge did not err in admitting testimony identifying the voices of the defendant and codefendants on tapes

of telephone conversations by witnesses who had previously heard them speak. [290-291]

At a criminal trial, the prosecutor's closing argument characterizing the defendant as a major trafficker in narcotics was based on the evidence and was not improper. [291-292]

At the trial of a defendant on drug charges, the judge's instruction to the jury not to consider evidence regarding a revolver which was marked for identification but did not become an exhibit was adequate. [292]

INDICTMENT found and returned in the Superior Court on October 19, 1973.

The case was tried before *Donahue*, J.

*Bernard Grossberg* for the defendant.

*James S. Hamrock, Jr.*, Special Assistant District Attorney, for the Commonwealth.

GOODMAN, J. The defendant was found guilty on an indictment charging conspiracy illegally to "possess with intent to distribute certain substances designated as controlled substances." See G. L. c. 94C, § 40.

During the course of a lengthy trial, the Commonwealth presented seventeen witnesses, the majority of whom were law enforcement officers. Their testimony and wiretaps of both the defendant's and a codefendant's telephones[1] evidenced an extensive cocaine distribution operation which involved the defendant, his wife, son, brother and nephew. There were two additional codefendants, who had access to the "stash" (the location where the narcotics were kept prior to sale).

The defendant, who was the leader of the operation, refused to deal with strangers. His procedure was generally as follows: whenever one of the codefendants had a prospective customer, he would telephone the defendant's home on Hazelton Street in Mattapan. Either the defendant or his wife would take the order, quote a price, and tell the caller what time the drugs would be available. Then the defendant or his wife would telephone a

---

[1] The jurors heard the tapes and were provided with the transcripts of approximately 100 of the 1700 intercepted telephone calls.

Blue Hill Avenue address (the "stash") to find out how soon the order would be ready. On a number of occasions after such calls, the defendant was observed by police getting into his car, driving to the "stash," and subsequently returning home. Several times an undercover agent gave sums of money to the defendant's nephew and brother for cocaine. The agent then waited in the car outside the Hazelton Street house while they obtained the narcotics from the defendant. Upon a later search, pursuant to a warrant, cocaine was found at the "stash," and a cocaine residue was found in the defendant's apartment. Marihuana and a revolver were also found in the defendant's apartment.

The defendant appealed (G. L. c. 278, §§ 33A-33G) and argues seven assignments of error. We discuss them in the order argued by the defendant and affirm the judgment.

1. *Motion to suppress.* The defendant attacks the affidavit of Detective Hanscom in support of the application for a wiretap authorization (G. L. c. 272, § 99F; *Commonwealth* v. *Vitello*, 367 Mass. 224, 256 [1975]) on the ground that it contains "misstatements" and "untruthful assertions." The affidavit listed six specific instances in which a particular informant (referred to as "It") had given Detective Hanscom "information which has resulted in arrests and convictions" of named persons for violation of the drug laws, G. L. c. 94C. At the hearing on the motion to suppress, the defendant produced search warrants and supporting affidavits in connection with four of the listed arrests and convictions, each of which affidavits set out information provided by an informant also referred to as "It." The defendant elicited from Detective Hanscom that the "It" referred to in those affidavits was not the same person as the "It" referred to in the affidavit for the wiretap application. Detective Hanscom testified, however, that "It" referred to in the wiretap application had indeed provided information in connection with the earlier cases, though not referred to in the affidavits for the search warrants in those cases.

The judge who heard the testimony believed Detective Hanscom, and we find no inconsistency which might cast doubt on his appraisal. Indeed, an examination of the careful and detailed affidavit for wiretap authorization, which, as reproduced in the defendant's brief, comprised eighteen pages, indicates that it is consistent with the concern by the Legislature that the "use of modern electronic surveillance devices pose[s] grave dangers to the privacy of all citizens of the commonwealth [and that] . . . [t]he use of such devices by law enforcement officials . . . should be limited to the investigation of organized crime." G. L. c. 272, § 99A, Preamble as appearing in St. 1968, c. 738, § 1. *Commonwealth* v. *Vitello*, 367 Mass. at 255 ("We, of course, agree that the statutory authority to apply for wiretap orders should 'be used with restraint' "). We do not have here an attempt to bolster a dubious affidavit. The affidavit contains extensive corroboration of the information given by "It": independent investigations by both Hanscom and a special agent of the Drug Enforcement Administration of the Department of Justice, and information given by another informant which the defendant does not question.[2] See *Commonwealth* v. *Alessio*, 377 Mass. 76, 80-82 (1979).[3]

We therefore need not consider the holding in *Commonwealth* v. *Reynolds*, 374 Mass. 142, 149 (1977), in which the Supreme Judicial Court remanded to the Superior Court a claim that an affidavit in support of a warrant was false. The court held that "if the judge should conclude on a preponderance of the evidence that the misstatements in the affidavit were intentional (they were certainly material), he should suppress the material

---

[2] In one instance, the affidavit asserts that "It's" information regarding a purchase was corroborated "in every detail" from a listening device on another informant also present during the incident.

[3] See *Commonwealth* v. *Vitello*, 367 Mass. at 272 ("That the warrants in the instant cases involved the interception of wire or oral communications does not mean that the warrants are of a novel genre to which previously established law is inapplicable").

obtained under the warrant. If he concludes that there was mere inadvertence without negligence, he should refuse to suppress. If his conclusion lies between these polar categories, he may return the matter directly to this court."[4] Compare *Franks* v. *Delaware*, 438 U.S. 154, 155-156 (1978). But see *Commonwealth* v. *Monosson*, 351 Mass. 327, 329 (1966); *Commonwealth* v. *Reynolds*, *supra* at n.15, and material to which it is appended.

2. *Motion for particulars.* The defendant cannot complain of the denial of his motion for particulars since it was denied without prejudice, and he took no exception. See Mass.R.A.P. 1B, 378 Mass. 926 (1979).[5] The motion was denied on December 17, 1973, and the trial did not begin until October 13, 1976; no attempt was made to renew the motion although the judge had during the proceedings indicated to other counsel with the same motions that they might renew their requests. *Commonwealth* v. *Hall*, 369 Mass. 715, 727 (1976). See *Ogens* v. *Northern Ind. Chem. Co.*, 304 Mass. 401, 402-403 (1939).

We therefore need not consider the applicability of G. L. c. 277, § 38, or *Commonwealth* v. *Baker*, 368 Mass. 58, 73-77 (1975), in which the court held that the denial of particulars was error but that the defendants were in no way prejudiced in their defense because "[t]here had been considerable pre-trial discovery [and] [t]he defend-

---

[4] The court further held: "We are prepared to say, however, that we join in the general view that the defendant usually should be obliged to make a preliminary showing, which ordinarily will be in affidavit form, that he has a case worthy of full hearing; otherwise hearing should be denied." *Commonwealth* v. *Reynolds*, *supra* at 150.

[5] Paragraph 4: "Review of . . . all appeals in which the assignment of errors is filed before July 1, 1979, shall follow pre-July 1, 1979, procedure." See par. 3 dealing with criminal cases in which any trial or hearing is in progress on July 1, 1979, and providing: "[E]xceptions claimed prior to July 1, 1979, but not bare objections, shall be regarded as preserving appellate rights." See also par. 5: "When handling appeals in progress on July 1, 1979, the appellate courts shall interpret and construe these rules, as amended, and these guidelines in such manner as will, by the exercise of sound judicial discretion, ensure justice."

ants knew at all times the essential basic facts . . . which they might have obtained if the particulars had been ordered" (id. at 77). Compare Commonwealth v. Comins, 371 Mass. 222, 225 (1976), in which an indictment for a substantive drug offense was in the language of G. L. c. 277, § 38, but the court pointed out that the defendant's motion for particulars had been allowed. Cf. also Commonwealth v. Gallo, 2 Mass. App. Ct. 636, 638-639 (1974). In our case, the defendants also had access both to information of police investigations set out in the affidavit for a wiretap warrant and to the tapes of conversations (see G. L. c. 272, § 990) — on which the Commonwealth based its case. The defendant points to nothing which might indicate the slightest prejudice from the failure to give particulars. Thus, such failure, even if error in light of the generality of the indictment and "if viewed as having constitutional dimensions"[6] (Commonwealth v. Baker, 368 Mass. at 77), was harmless beyond a reasonable doubt.

3. Motion for recusal. We do not believe that the trial judge was required to recuse himself from presiding at the defendant's jury trial in October, 1976, because in 1973 he had authorized a wiretap of the defendant's telephone and the renewal of the wiretap warrant. G. L. c. 272, §§ 99H-99J. Although the judge in renewing the warrant characterized the interceptions on which the renewal was based as revealing "an extensive organization which supplies illegal drugs" and as implicating the defendant, this characterization and the documents in which it was contained were, as the trial judge pointed out in his findings, rulings and order, "solely for the purpose of indicating probable cause for the continuance of the wiretap, not as any finding of fact as to the merits of

---

[6] See art. 12 of the Declaration of Rights of the Massachusetts Constitution, providing that "[n]o subject shall be held to answer for any crimes or offence, until the same is fully and plainly, substantially and formally, described to him . . . ."

this case." In these circumstances, the judge was within his discretion in refusing to disqualify himself from presiding at the defendant's jury trial. *Commonwealth* v. *Coyne*, 372 Mass. 599, 602 (1977). Much must be left to the sound judgment of the judge himself. *Commonwealth* v. *Leventhal*, 364 Mass. 718, 725 (1974), citing *King* v. *Grace*, 293 Mass. 244, 247 (1936). Compare *United States* v. *Garramone*, 374 F. Supp. 256, 258 (E.D. Pa. 1974) (in which a judge who had authorized a wiretap refused to recuse himself from the trial on the merits), with *United States* v. *Zarowitz*, 326 F. Supp. 90, 92-94 (C.D. Cal. 1971) (in which a judge who had likewise issued a wiretap warrant did recuse himself).

In making such a decision the judge should determine whether the particular circumstances of his participation in the issuance of the wiretap warrant "might be termed participation in pre-indictment investigations" — the view of the judge in the *Zarowitz* case at 92 — or whether in the circumstances his position is more analogous to that of a trial judge to whom a motion to suppress has been referred and who, after deciding the motion, which may involve probable cause and other matters decisive at trial, then presides over a jury trial.[7] *Commonwealth* v. *Williams*, 364 Mass. 145, 149 (1973) ("There was no error in the mere fact that the same judge presided over a lengthy evidentiary hearing on the defendant's motions to suppress and presided over the trial in chief before a jury"). *Commonwealth* v. *Valliere*, 366 Mass. 479, 483 (1974).

4. The remaining assignments of error do not require extensive treatment.

---

[7] In this case the motion to suppress which, in effect, reviewed the trial judge's wiretap authorization had been heard on December 18 and 19, 1973, by a different judge. See part 1 of this opinion. Our citation of the *Garramone* case, in which the judge also refused to recuse himself from passing on the validity of the wiretap warrant he had issued, should not be construed as indicating our position on that refusal.

a. In an apparent effort to discredit the testimony of Agent Gamble of the Drug Enforcement Administration of the Department of Justice, defense counsel on cross-examination elicited that the informant with whom Gamble had worked had requested and received payments. Defense counsel thereupon sought to elicit that the informant had been paid to introduce drug sellers to Agent Gamble. (Indeed, in his closing argument he suggested that the jury make that inference.) In the circumstances, it was within the trial judge's discretion to permit the Commonwealth to elicit on redirect examination that the informant had received the money for the purpose of relocating in Chicago because of threats made on his life. *Commonwealth* v. *Smith,* 329 Mass. 477, 479-481 (1952). *Commonwealth* v. *Hoffer,* 375 Mass. 369, 375-376 (1978). Nor was it inadmissible because the "testimony incidentally tended to show that the defendant [ ] may have committed other offences, e.g. by intimidating other persons." *Commonwealth* v. *Douglas,* 354 Mass. 212, 225-226 (1968), cert. denied, 394 U.S. 960 (1969). *Commonwealth* v. *Dougan,* 377 Mass. 303, 308 (1979).

b. There is no merit in the defendant's argument that *Commonwealth* v. *Lykus,* 367 Mass. 191 (1975), precludes the admission of testimony identifying the voices of the defendant and codefendants on tapes of telephone conversations, when the witnesses have previously heard them speak. Indeed, in the *Lykus* case (see 195) identifications of voices on recordings of telephone conversations by witnesses who had heard the defendant speak on the telephone were admitted without question — quite apart from the evidence based on voice spectrograms, at issue in that case.[8] We follow *United States* v. *DiMuro,* 540 F.2d

---

[8] In the case at bar the Commonwealth did not introduce evidence based on spectrograms. The expert called by the defendant merely testified that he could draw no conclusion on the basis of a comparative spectrographic analysis of the tapes and voice exemplars which he had been furnished. The extent, if any, that this cast any doubt on the voice identification by the various witnesses was for the jury. We

503, 513 (1st Cir. 1976), cert. denied, 429 U.S. 1038 (1977), which applied, as a matter of common law, Federal Rule of Evidence 901(b) (5) before it became effective. That rule provides that "[i]dentification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording" may be made "by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker." The same course was followed in *United States* v. *Bonanno*, 487 F.2d 654, 659 (2d Cir. 1973). See also *United States* v. *Rizzo*, 492 F.2d 443, 448 (2d Cir.), cert. denied, 417 U.S. 944 (1974); *United States* v. *Nashawaty*, 571 F.2d 71, 75 (1st Cir. 1978). Our conclusion is sustained by the fact that "[i]dentification of telephone voices by witnesses familiar with the voice of the identified person has long been permitted by the law of the Commonwealth." *Commonwealth* v. *Lykus*, 367 Mass. at 201 n.4, and cases cited.

c. We see no impropriety in the prosecuting attorney's closing argument characterizing the defendant as "a major trafficker in narcotics," after carefully pointing out to the jury that a special agent of the Drug Enforcement Administration in answer to a defense counsel's question had described a "major trafficker in narcotics" as "[a]n individual who exists on a day-by-day basis dealing in ounce quantities of narcotics or multi-ounce quantities of narcotics and who has an organization working for him." The prosecuting attorney then went on to say, "Who is that? That's George Williams. He is seated right here before you, and that's who he was describing, a major trafficker in narcotics and his whole organization. It happens to be his family, but everyone from the street pusher all the way up to the top is right here before you, and that is the evidence that you have had in this case." The appli-

---

observe from our examination of the transcript that, in any event, the jury had before them confirming evidence — apart from the voice identifications — amply warranting the inference that the voice on the relevant tapes was that of the defendant. See *Commonwealth* v. *Hartford*, 346 Mass. 482, 487-488 (1963).

cability to the defendant of this carefully limited description, in context, was suggested to the jury not as mere inflammatory rhetoric but as grounded in "the evidence that you have had in this case"; and our examination of the transcript establishes that it was indeed so based. The argument was vigorous and within bounds. See *Commonwealth* v. *Earltop*, 372 Mass. 199, 204-205 (1977) (Hennessey, C.J., concurring).

d. Officer Gilbert Griffiths testified at trial that he found a revolver during his search of the defendant's bedroom. Although the weapon was marked for identification, it did not become an exhibit. At the conclusion of the judge's charge, defense counsel requested that all evidence regarding the revolver be struck from the record; he subsequently moved for a mistrial. The judge then gave the additional instruction set out in the margin,[9] directing the jury not to consider evidence regarding the revolver.

We believe the instruction was adequate to its purpose. *Commonwealth* v. *Cepulonis*, 7 Mass. App. Ct. 646, 649 (1979), citing *Cottman* v. *Donnelly*, 398 F. Supp. 1086, 1094 (D.Mass. 1975). In any event, our examination of the transcript indicates that the evidence of the defendant's guilt was so "substantial, lengthy and convincing" that there is no reasonable possibility that the evidence as to the revolver here in question contributed to the conviction. *Commonwealth* v. *Miller*, 361 Mass. 644, 661 (1972).

*Judgment affirmed.*

---

[9] "I mentioned the objective of the conspiracy as being a violation of the Drug Control Act. There was some testimony about a gun being found in some premises. It is for you to judge, of course, and there was some argument about it by counsel. However, I did not allow that gun to become an exhibit. It is not the objective or the alleged objective of this conspiracy, so I direct you only to consider the evidence before you. However, the evidence concerning the gun should not be for your consideration in determining the innocence or guilt of the defendants on this indictment."