COMMONWEALTH vs. RICHARD A. ABDELNOUR.

Worcester, October 16, 1980, January 22, 1981. — March 5, 1981.

Present: GREANEY, ROSE, & PERRETTA, JJ.

*Probable Cause. Evidence,* Informer privilege. *Practice, Criminal,*
Disclosure of identity of informant.

A judge erred in dismissing indictments against a defendant because of
the Commonwealth's refusal to comply with an order to disclose the
identity of a confidential informant who had supplied information in
an affidavit used to obtain a search warrant for the defendant's
premises, where the defendant's contention that disclosure was nec-
essary in order to test the informant's veracity with respect to the affi-
davit was not supported by any showing that the information was false
or incredible when made, that the police could not have had reason-
able grounds for believing it, or that the police had the means avail-
able to establish its veracity without such delay as would defeat a
legitimate law enforcement purpose, and the order was, therefore, un-
warranted. [534-537]

A judge erred in ordering the Commonwealth to disclose the identity
of a confidential informant to assist the defendant in his defense at trial
where there was no showing as to how the informant's identity could
have been helpful to establish the defendant's innocence. [537-538]

INDICTMENTS found and returned in the Superior Court
Department on January 23, 1980.

A motion to dismiss was heard by *Meagher, J.*

*Daniel F. Toomey,* Assistant District Attorney (*Paul Bol-
ton,* Assistant District Attorney, with him) for the
Commonwealth.

*Harry Zarrow* for the defendant.

GREANEY, J. We are concerned in this case with the pro-
priety of an order by a Superior Court judge dismissing in-
dictments which charged the defendant with being found in
a place with gaming apparatus (G. L. c. 271, § 17), and
with using a telephone for registering bets (G. L. c. 271,

§ 17A). The dismissal occurred after the Commonwealth refused to comply with the judge's order to disclose the identity of a confidential informant who had supplied information in an affidavit used by the State police to obtain a search warrant for the defendant's premises. The appeal was transferred to this court by the Supreme Judicial Court. See G. L. c. 278, § 28E, as appearing in St. 1979, c. 344, § 45; Mass.R.Crim.P. 15(b)(1), 378 Mass. 883 (1979); G. L. c. 211, § 4A. We conclude that the order was erroneous and must be reversed.

The pertinent facts are these. On December 17, 1979, a State police officer applied to a District Court clerk for a warrant to search the defendant's premises at 70 Miscoe Road in Worcester. The affidavit accompanying the warrant application recited that, as a result of electronic surveillance in November, 1977, a search warrant had been obtained and later executed upon the defendant's property, that gaming apparatus had been discovered therein, that subsequent investigation led to indictments against thirteen persons, and that the defendant had been immunized from prosecution in exchange for his testimony in the matter. The affidavit next stated that a confidential informant, whose reliability had been established through past cooperation with the State police,[1] had reported to a State trooper on November 12, 1979, that the defendant was again "booking" at a designated telephone number from the Miscoe Road address and that the informant had, as recently as two days before, placed bets with the defendant. In order to corroborate the tip, the trooper arranged a telephone call in the informant's presence on the same day to the designated number. After receiving an answer on the first ring, the trooper "handed the telephone to [the informant] who placed a bet with a person he referred to as 'Dickie' on an

---

[1] According to the affidavit, the informant had provided the special services section of the State police with information in the past which independent investigation had established as reliable, including information that had led to the arrest and conviction on July 30, 1979, of a named individual in a District Court for gaming violations.

athletic contest being played that night." The affidavit also described the results of a four-week investigation which included: verification of the telephone number as the defendant's unpublished listing, observation of the defendant's automobile at the Miscoe Road address at various times on several days when college and professional football games were being played, and busy signals at the defendant's telephone number during the starting times of those games.

The affidavit recited two other pieces of information. The first was a report by the informant that, as of December 1, 1979, he was still placing bets with the defendant at his unlisted number and that the latest bets had been registered over the previous weekend. The second concerned the contents of a telephone conversation between the trooper and a male who answered a call made to the defendant's number at approximately 1:45 P.M. on Sunday, December 9, 1979.[2]

Based on the foregoing, and the affiant's experienced opinion that the actions described in the affidavit were consistent with conduct expected of someone engaged in illegal gaming, a search warrant issued which, when executed on

---

[2] The affidavit recited the following conversation between Trooper Primeau and an unknown male ("unmale") who identified himself as "Richie":

"Unmale: Hello!

Primeau: Richie!

Richie: Yeah! What do you want?

Primeau: (Fictitious names) What are you using on New England today?

Richie: Who gave you my number?

Primeau: (Fictitious names) He said it would be ok to use his name. My name is Nicky.

Richie: Have him call me. I don't know you! Then you can call him and get it from him.

Primeau: Ok! See you later Richie!

Richie: Ok!"

December 17, 1979, produced the items[3] used as the basis for the indictments.[4]

Thereafter, counsel for the defendant moved to suppress the items seized under the warrant and separately moved for discovery of the informant's name and address. The motion seeking disclosure alleged that the November 12 telephone call described in the affidavit involved actual participation by the informant in the commission of the crimes. At the motion hearing, defense counsel argued with respect to that particular telephone call that, because the trooper had not listened to the voice on the other end of the line, the truth of what the trooper had overheard from the informant was "put in issue" and, as a result, that "right[s] of confrontation and . . . cross-examination of [the informant] were essential to a fair trial." Nothing else of substance was advanced in support of the motion. The judge ordered disclosure over the Commonwealth's objection and he dismissed the indictments at a subsequent hearing when the Commonwealth refused to reveal the informant's identity.

1. We turn first to the contention that disclosure was necessary so that the defendant could test the informant's veracity with respect to the affidavit.

The right to challenge the truthfulness of statements contained in a search warrant affidavit is limited to cases where the defendant can make a substantial preliminary showing that "a false statement knowingly and intentionally, or with reckless disregard for the truth [has been] included by the affiant in the . . . affidavit . . . ." *Franks* v. *Delaware*, 438 U.S. 154, 155-156 (1978). *Commonwealth* v. *Reynolds*,

---

[3] The return on the warrant stated that the following items had been seized: $280 in United States currency, a ball-point pen, two push-button telephones, numerous slips of paper with names and notations, four telephone bills for the number listed to the defendant, numerous college and professional football schedules, one football newspaper dated December 4, 1979, one address book, and one college and professional basketball yearbook for 1978-1979.

[4] Both indictments alleged that the crimes occurred on December 17, 1979.

374 Mass. 142, 147, 149 (1977). See also *Commonwealth* v. *Perez*, 357 Mass. 290, 301-302 (1970); *Commonwealth* v. *Murray*, 359 Mass. 541, 548 (1971). Additionally, the claimed misstatement must be shown by the defendant to be crucial to the existence of probable cause and not merely of peripheral relevance. *Franks* v. *Delaware, supra* at 156. *Rugendorf* v. *United States*, 376 U.S. 528, 532 (1964). See *Commonwealth* v. *Reynolds, supra* at 147, and cases cited. The *Franks* decision confined its holding to baseless statements made by the affiant and reserved judgment on allegedly false statements in an affidavit attributed to a "nongovernmental informant." *Franks* at 171. See *Commonwealth* v. *Reynolds, supra* at 145-146. In *McCray* v. *Illinois*, 386 U.S. 300 (1967), the United States Supreme Court rejected a contention that the accused has a constitutional right to the disclosure of an informant who has supplied information bearing solely on the question of probable cause. "[Disclosure of the inform[ant]'s identity . . . [is not required] in . . . [a] preliminary hearing where it appears that the officers made the . . . search in reliance on facts supplied by an inform[ant] they had reason to trust." *Id.* at 312. However, rather than setting down a hard and fast rule prohibiting disclosure in all warrant affidavit cases no matter what the circumstances (see *United States* v. *Freund*, 525 F.2d 873, 877 [5th Cir.], cert. denied, 426 U.S. 923 [1976]; see also discussion in 2 Louisell & Mueller, Federal Evidence § 236, at 820-823 [1978]; 1 LaFave, Search and Seizure § 3.3, at 574-575 [1978]), these cases leave disclosure to the sound discretion of the judge handling the motion. As stated by the Court in *McCray*: "[I]t should rest entirely with the judge who hears the motion to suppress to decide whether he needs such disclosure as to the informant in order to decide whether the officer is a believeable witness." *McCray* v. *Illinois, supra* at 308, quoting from *State* v. *Burnett*, 42 N.J. 377, 388 (1964).

*McCray* and the other cases just discussed make clear as well that requests for disclosure in warrant affidavit cases should be denied without a hearing unless the defendant

makes an adequate threshold demonstration either (1) that the police have fabricated the informant's existence or counterfeited the corroboration for his tip, or (2) that the police have relied upon and used information that they knew was patently unreliable.[5] Such a showing should be made by an affidavit or other suitable offer of proof accompanying the disclosure motion and supporting the particular grounds

---

[5] There undoubtedly are other situations which will arise beyond those described in the text where a defendant can make a strong preliminary showing that the police conduct appears inexplicable in light of what is actually claimed to have been reported to them by the informant, and where, as a result, an evidentiary hearing as to the need for disclosure would be constitutionally required. Such situations do not admit of precise categorization and are best left to case-by-case analysis on their particular merits. Some examples are set forth and discussed in 2 Louisell & Mueller, Federal Evidence, *supra* at 822-823, and cases cited in nn. 15 & 16; 1 LaFave, Search and Seizure, *supra* at 578-579, and cases discussed in nn. 308 & 309. Additionally, rule 509(c)(3) of the proposed Massachusetts Rules of Evidence makes express provision for disclosure in cases where "information from an inform[ant] is relied upon to establish the legality of the means by which evidence is obtained and the judge is not satisfied that the information was received from an inform[ant] reasonably believed to be reliable or credible." The advisory committee which drafted the proposed rule stated in its notes that this exception to the rule against nondisclosure was drawn from the case of *Roviaro* v. *United States*, 353 U.S. 53, 60-61 (1957), and from the *McCray* case, *supra,* "which have guided Massachusetts law." See also Model Code of Evidence rule 230, and the Comment thereto at 169; and 13 Uniform Rules of Evidence, rule 509, at 262-263 (Master ed. 1980). Finally, we should note that in appropriate cases where the judge feels that the informant should be examined in connection with the disclosure request, he would have the inherent power to conduct an in camera inquiry in order to satisfy himself as to the propriety or need for disclosure. The use of *in camera* proceedings to solve the hard cases and to protect and balance the interests involved is well recognized by the cases. See *Commonwealth* v. *Collins, ante* 126, 139-140 (1981) . See also *United States* v. *Jackson*, 384 F.2d 825, 827 (3d Cir. 1967); *United States* v. *Hurse*, 453 F.2d 128, 130-131 (8th Cir. 1971), cert. denied, 414 U.S. 908 (1973); *United States* v. *Anderson*, 509 F.2d 724, 728-729 (9th Cir.), cert. denied, 420 U.S. 910 (1975); *United States* v. *Moore*, 522 F.2d 1068, 1073 (9th Cir. 1975); *United States* v. *Alexander*, 559 F.2d 1339, 1344-1345 (5th Cir. 1977). In camera inquiry is also sanctioned by rule 509 of our proposed rules as well as by the Model Code of Pre-Arraignment Procedure § SS 290.4 (1975).

raised. Where the claim is advanced that the police could not have properly relied upon the informant, the defendant's preliminary showing must, at a minimum, satisfy the judge that the information sought to be attacked was false or incredible when made, that the police could not have had reasonable grounds for believing it, and that the police had the means available to establish its veracity without such delay as would defeat a legitimate law enforcement purpose. In this context, a suppression rule cannot be expected to prevent human error but it can and should be employed "to strike down perjury and to promote careful police work." *United States* v. *Luna*, 525 F.2d 4, 8-9 (6th Cir. 1975), cert. denied, 424 U.S. 965 (1976). See also *United States* v. *Belculfine*, 508 F.2d 58, 62-63 (1st Cir. 1974); *United States* v. *Cruz*, 594 F.2d 268, 271-273 (1st Cir. 1979). Note, The Outwardly Sufficient Search Warrant Affidavit: What If It's False?, 19 U.C.L.A. L. Rev. 96, 133-139 (1971).

Viewed under these standards, the motion in this case was inadequate to require an evidentiary hearing as to disclosure, much less to warrant the order that was made. No assertion has been made that the State police fabricated the informant's existence, and the defendant appears to concede that the informant's past experience as reported in the affidavit (note 1, *supra*) qualified him as a trustworthy source. See *Commonwealth* v. *Stevens*, 362 Mass. 24, 26-27 (1972); *Commonwealth* v. *Norris*, 6 Mass. App. Ct. 761, 764 (1978). The unsupported allegation that the informant may have falsified the bookie's end of the November 12 telephone conversation is conjectural. Nothing else is shown in the record which would raise a question as to the propriety of reliance by the State police on the informant's tip as the starting point for their investigation. We are satisfied that this aspect of the motion should have been summarily denied.

2. The defendant's last argument that disclosure was ordered to assist his defense at trial is equally footless.

The need for disclosure at or in advance of trial "calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the inform[ant']s testimony and other relevant factors." *Roviaro* v. *United States*, 353 U.S. 53, 62 (1957). See *Commonwealth* v. *Ennis*, 1 Mass. App. Ct. 499, 501-502 (1973). The notion that the informant's conduct on November 12 constituted participation in crimes which are alleged to have occurred on December 17 is manifestly erroneous. None of the other relevant criteria enumerated in the *Roviaro* decision were even remotely developed by the defendant at the hearing. In particular, there was no showing as to how the informant's identity if produced could have been helpful to establish the defendant's innocence at trial. This aspect of the motion is supported by nothing more than a desire to examine the informant with the hope of obtaining some marginal discovery. *Franks* v. *Delaware, supra* at 171. As such it could not overcome the public interest in protecting the informant's identity. See *Commonwealth* v. *Swenson*, 368 Mass. 268, 278 (1975); *Commonwealth* v. *Mott*, 2 Mass. App. Ct. 47, 53 (1974). See also *United States* v. *Estrella*, 567 F.2d 1151, 1153 (1st Cir. 1977), and cases cited.

The order dismissing the indictments is reversed.

*So ordered.*