NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1417

COMMONWEALTH

vs.

AHMED SHABAZZ.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Convicted by a Superior Court jury of possession of a class B substance (cocaine) with intent to distribute, G. L. c. 94C, § 32A (a), the defendant appeals.[1] He argues that the evidence was insufficient to prove that he possessed cocaine, and that the prosecutor committed misconduct in his opening and closing statements and by introducing certain inculpatory evidence. We affirm.

---

[1] The defendant was acquitted of trafficking in heroin, a class A substance, G. L. c. 94C, § 32E (c); possession of a large capacity firearm during commission of a felony, G. L. c. 265, § 18B; unlawful possession of a large capacity firearm, G. L. c. 269, § 10 (m); and unlawful possession of ammunition, G. L. c. 269, § 10 (h) (1).

Background.  On November 1, 2019, North Adams police including Detective Joshua Zustra were conducting surveillance outside 3 Loftus Street.  They were investigating Marcus Johnson, for whom they had an arrest warrant.  Johnson and a woman known to police as a drug user came out of 3 Loftus Street, and the woman got behind the wheel of a small red sedan.  After leaning into the car as if he was putting something in the back seat area, Johnson got into its passenger seat.  The red car traveled a short distance, and then police stopped it and arrested Johnson.  Behind its passenger seat was a blue backpack containing seventy-seven grams of cocaine and 692 small glassine bags of heroin stamped "Good Work."  On the driver's side floor were five glassine bags of heroin stamped "The Incredible Hulk." On Johnson's person was $3,530 in cash.

Police went to 3 Loftus Street and secured apartment two while applying for a search warrant.  The apartment's tenant was also known to police as a drug user, as were at least two other people present in the apartment.[2]  Police told the people in the

---

[2] Pittsfield police Investigator Thomas Bowler, who was unaware of the facts of this case, testified that a "trap house" is the home of a drug user who permits a drug dealer to use the home as a base of operations in exchange for drugs or money.  If the drug dealer leaves a large stash of drugs at the trap house, the dealer typically keeps it in a locked safe or under guard of a trusted person.

apartment that they were free to leave, but none of their belongings would be allowed to leave the apartment, and so they would be pat frisked prior to leaving. At this point several people came downstairs from an upstairs apartment, and the defendant and Oais Hasan emerged from a bedroom. Detective Zustra searched them and found $150 on the defendant's person and 12.5 grams of cocaine in Hasan's pocket. The defendant and Hasan left the building.

During execution of the warrant, police found on the kitchen counter next to the stove a Pyrex container with cocaine in it. Detective Zustra explained that a Pyrex container is used while cooking powder cocaine with baking soda to turn it into "crack" cocaine.

In the bedroom from which the defendant and Hasan had emerged was a digital scale bearing cocaine residue, eight grams of crack cocaine drying on a coffee filter, a box of baking soda, a box of black elastic bands, plastic baggies and "dealer blowouts,"[3] and a price list for various amounts of heroin and cocaine. Also in that bedroom was a bag containing documents

---

[3] Detective Zustra explained that in Berkshire County cocaine is typically packaged by putting it in the corner of a plastic baggie, tying up that corner, and then cutting off the rest of the baggie. The cut-off portion of the baggie is referred to as a "dealer blowout."

bearing the defendant's name, including a job application.  In the bedroom closet was a locked safe.[4]

Meanwhile, while police were executing the search warrant, the defendant and Hasan reentered the building and were in the basement.  Police found them there, and the defendant and Hasan said it was cold outside and they had nowhere else to go.  The defendant and Hasan were arrested and transported to the police station, where the defendant was placed in a cell near Johnson.  At some later point, the defendant yelled to Johnson, "I can't believe you had that shit in the car," "They let us go, they found the shit in the spot, and then they snatched us up," and "We were hiding."

Discussion.  1.  Required finding.  The defendant contends that there was "no evidence linking [the] defendant to possessing any contraband."  This court has long held that evidence that a defendant occupied a bedroom where drugs were found can be sufficient to prove constructive possession.  See Commonwealth v. Nichols, 4 Mass. App. Ct. 606, 612-614 (1976).  See also Commonwealth v. Alcantara, 53 Mass. App. Ct. 591, 596-

---

[4] Inside the safe were hundreds of glassine bags of heroin stamped "Good Work," packaged in bundles with black elastic bands; hundreds of glassine bags of heroin stamped "The Incredible Hulk"; and a loaded handgun.  As mentioned, see note 1, supra, the jury acquitted the defendant of possessory crimes involving those items.

597 (2002) (defendant's papers found in bedroom and pill bottle bearing his name found in bathroom permitted inference that he possessed cocaine in bathroom).  In addition, the jury could infer that the defendant's yelling to Johnson that police "found the shit in the spot" was an admission to his constructive possession of drugs in the bedroom, including the eight grams of crack cocaine drying on the coffee filter.

2.  Prosecutorial misconduct.  The defendant argues that his due process rights were violated when the prosecutor introduced and argued from incriminatory evidence.  We are not persuaded.

a.  Opening statement.  The defendant contends that the prosecutor's opening statement was impermissibly argumentative, "argued facts not in evidence," and improperly suggested the defendant's "state of mind."  The defendant objected when the prosecutor said in opening that the evidence would show that the defendant told Johnson, "they found drugs in the spot," and thus we review that claim for prejudicial error.  See Commonwealth v. Kent K., 427 Mass. 754, 759 n.5 (1998).

At the time of opening statements, no facts were yet "in evidence," and so at that point the prosecutor needed to have a good faith basis to expect that the facts he asserted would be established by the evidence.  See Commonwealth v. Weeks, 77

5

Mass. App. Ct. 1, 12 (2010). As to the prosecutor's statement that the evidence would show that the defendant told Johnson that "they found drugs,"[5] although the trial testimony was that the defendant used the word "shit," the jury could reasonably infer that the defendant was referring to drugs. The defendant was not prejudiced by the prosecutor's use of the word "drugs" instead of "shit" in opening. Additionally, the defendant has not shown that the prosecutor did not have a good faith belief that the evidence would show that the defendant told Johnson that police found drugs. See id.

As for the defendant's argument that the prosecutor said that the evidence would show that the defendant and Hasan "snuck back into the basement and were waiting there for the officers to leave," the defendant did not object. The prosecutor had a good faith basis for that assertion; indeed, it was a fair inference from the testimony the jury later heard that the defendant had yelled to Johnson, "We were hiding."

b. <u>Presentation of evidence</u>. The defendant argues that the prosecutor committed misconduct in introducing evidence. He

---

[5] The prosecutor said, "you're also going to hear that . . . [the defendant] then began a conversation with Mr. Johnson where he said . . . , 'I can't believe you had shit in the car,' . . . and then [the defendant] later said, 'Yeah, they found drugs in the spot and they snatched us out.'"

contends that the prosecutor improperly elicited from Detective Zustra evidence of the drugs found with Johnson in the red car that were packaged like those found in the safe. The prosecutor introduced that evidence in accordance with the judge's pretrial ruling, and the judge properly limited the jury's consideration of the evidence by his instructions. The defendant argues that the Commonwealth's introduction of evidence of the drugs found in the red car amounted to pursuit of "a theory of joint venture," which he says was improper because Johnson's case, which was severed, had been dismissed. The judge did not instruct on joint venture, see Commonwealth v. Zanetti, 454 Mass. 449, 466 (2009), but did instruct, appropriately, on joint possession, see Commonwealth v. Blevins, 56 Mass. App. Ct. 206, 210 (2002). The prosecutor did not commit misconduct by introducing this evidence, which in any event was not particularly prejudicial because the jury acquitted the defendant of possessing the drugs in the safe.

The defendant also argues that the prosecutor committed misconduct by introducing testimony of Sergeant Mark Bailey, who photographed the apartment during the search. The defendant contends that police improperly "staged" a photograph because it depicted items police found in different locations, including the Pyrex container, a cell phone, the money found on the

7

defendant, and the cocaine found on Hasan.  The defendant has not included that photograph in the record appendix, but based on the record before us we discern no prosecutorial misconduct. The prosecutor elicited testimony from police witnesses explaining where each of the items in the photograph were found. Sergeant Bailey testified, "When I showed up, that's where I saw them."  That was sufficient to authenticate the photograph as a fair and accurate representation of those items.  See Commonwealth v. Figueroa, 56 Mass. App. 641, 646 (2002).  See also Mass. G. Evid. § 901(a) (2024).  Once the photograph was properly authenticated, any argument regarding its reliability went to the weight of the evidence, not its admissibility.  See Commonwealth v. Meola, 95 Mass. App. Ct. 303, 313 (2019). Indeed, the defendant's counsel argued in closing that "we learned that the officers placed these items here" and "staged" the evidence.

The defendant argues that the prosecutor committed misconduct by eliciting testimony of Sergeant Brad Vivori that the defendant yelled to Johnson, "We were hiding," and that Sergeant Vivori interpreted the statement to mean that the defendant and Hasan were hiding in the basement.  Sergeant Vivori testified that he recognized the defendant's voice because he had heard the defendant speaking while police were

8

executing the search warrant and during the booking process. See Commonwealth v. Williams, 8 Mass. App. Ct. 283, 290-291 (1979). See also Mass. G. Evid. § 901 (b)(5) (2024). The judge instructed that the jury's interpretation of the meaning of the defendant's statements controlled, not Sergeant Vivori's interpretation, and also gave a humane practice instruction requiring the jury to determine if the defendant's statements were voluntary, see Commonwealth v. Tavares, 385 Mass. 140, 149-152, cert. denied, 457 U.S. 1137 (1982). Any ambiguity in the meaning of the defendant's statements to Johnson "was for counsel to argue and the jury to determine," and that ambiguity did not render the defendant's statement inadmissible. Commonwealth v. Lewis, 465 Mass. 119, 127 (2013).

c. Closing argument. The defendant contends that the prosecutor's closing was improper. The defendant objected to the prosecutor's argument that the defendant and Hasan were Johnson's "trusted friends" whom Johnson left at the apartment to guard the drugs.

Based on our review of the Commonwealth's closing argument, we find no merit to the defendant's claims. The prosecutor's argument that the defendant and Hasan were Johnson's trusted friends and were guarding the drugs was a permissible inference from evidence including the following. The defendant and Hasan

were both from Yonkers, New York, and said they had nowhere else to go during execution of the search warrant other than the basement.  In the bedroom apparently occupied by the defendant were items including eight grams of crack cocaine drying on a coffee filter on the dresser and the price list,[6] from which the prosecutor permissibly urged the jury to infer that the defendant possessed the items that were "laying out there for all to see."  Also in the bedroom was a locked safe with its key nearby that contained hundreds of glassine bags of heroin stamped "Good Work" and "The Incredible Hulk" like those found with Johnson in the red car.[7]  The prosecutor's argument was also based on the expert testimony about trap houses, see note 2, supra, about which the defendant does not complain on appeal.

For the first time on appeal, the defendant argues that the prosecutor improperly argued, "[s]o we're doing this puzzle together; you all and I and everyone here in court."  After describing the evidence, the prosecutor ended his closing by

---

[6] The prosecutor argued, "But who might need a price sheet if the drugs are kept in that east bedroom?  Two people who were left there to guard those drugs because while Mr. Johnson's gone, someone would come and want to buy something so they're going to need to know how much to charge them."

[7] To the extent that the prosecutor urged the jury to infer that the defendant possessed the items in the safe, the defendant was not prejudiced because, as mentioned above, the jury acquitted him of possessing those items.

saying, "Even now, there are still some pieces of that puzzle missing, but I would submit to you that they're small pieces. And even though those pieces are missing, you still see the entire picture here."  In context, we do not consider the prosecutor's use of the first-person plural "we" to mean that he was asking the jury to align themselves with the Commonwealth. See Commonwealth v. Jenkins, 458 Mass. 791, 797 (2011).  As for the references to a jigsaw puzzle, we "recognize that a jury are capable of sorting out hyperbole and rhetoric in the closing arguments of lawyers and that a certain amount of both devices is usually present in all closing arguments." Commonwealth v. Pike, 430 Mass. 317, 327 (1999).  See Commonwealth v. Coleman, 30 Mass. App. Ct. 229, 237 (1991) ("The prosecutor's opening reference to a jigsaw puzzle was harmless").  That said, even assuming that the prosecutor's urging the jury to overlook the "missing" puzzle pieces would have been better left unsaid, we discern no reversible error given the strength of the Commonwealth's case and the absence of other errors.  Cf. Commonwealth v. Dyette, 87 Mass. App. Ct. 548, 562 (2015) (prosecutor invited jury to rely on Commonwealth's credibility to fill in gaps in "puzzle"; those statements "may or may not constitute reversible error per se," but "weigh heavily" when considered with other errors).

11

d. Cumulative effect. The defendant argues that the claimed errors, including those not objected to, had a cumulative effect requiring reversal. Given our conclusions, there was no risk that any error, or any cumulative effect, requires reversal. See Commonwealth v. Roy, 464 Mass. 818, 836 (2013).

Judgment affirmed.

By the Court (Desmond, Grant & Hodgens, JJ.[8]),

Clerk

Entered: May 16, 2025.

---

[8] The panelists are listed in order of seniority.

12